# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00801-CR

Courtney Benjamine Brissette, Appellant

v.

The State of Texas, Appellee

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-04-071, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Courtney Benjamine Brissette guilty of sexual assault and assessed punishment at six years' imprisonment. *See* Tex. Penal Code Ann. § 22.011 (West Supp. 2006). In his only point of error, appellant urges that he did not receive effective assistance of counsel at the hearing on his motion for new trial because his attorney failed to call an essential witness. Appellant asks the Court to abate the appeal for a further hearing on the new trial motion so that an adequate record can be made. Unpersuaded by appellant's argument, we affirm the conviction.

### *Trial testimony*

The alleged offense occurred on January 18, 2004, in the residence of Melvin and Sharae Walker in Kyle. Appellant, Sharae's nineteen-year-old nephew, lived with his grandparents

in Las Vegas, Nevada, but was visiting in the Walker home for the holidays. The complainant, who is ten years older than appellant, was a resident of Austin and a long-time friend of the Walkers who was spending the night with them, as she often did. The complainant testified that she did not know appellant prior to meeting him at the Walker home a few weeks before the night in question.

The complainant testified that she was sleeping on the couch in the downstairs family room. The other occupants of the house, including appellant and the Walkers, were sleeping upstairs. The complainant testified that between 1:00 and 2:00 a.m., she "was jolted awake because Courtney had put his—had shoved his penis in my mouth and had woken me." The complainant said that she pushed appellant away and he went back upstairs. She reported what had happened to Melvin Walker, and the police were eventually called.

Appellant testified that he first met the complainant in 1996 or 1997 at a family gathering. With regard to the alleged incident, appellant said, "I had my penis in my hand. I walked over to the couch and I touched [the complainant] on her shoulder. She was asleep on the couch and the television was off so what I did was I tapped her on the shoulder and she started moving around." Appellant testified that the complainant began to rub her nose with her hand. As she did this, "I had yawned and I had stretched and during this time I had fell forward. And then when I fell forward, I caught myself on the couch and saw my sexual organ was close to her." Appellant said that the complainant's hand briefly touched his penis, but he denied that his penis entered her mouth or even touched her lips.

After being confronted by Melvin Walker about his conduct, appellant apologized to the complainant. He told her, "I guess I went about this the wrong way. I'm sorry." Appellant

2

explained at trial that "the reason I told him that was because instead of me even having my male organ out when I approached her, I should have asked her first and then seen what she said."

The jury found that appellant sexually assaulted the complainant by penetrating her mouth with his sexual organ. *Id*. § 22.011(a)(1)(B).

### *Motion for new trial*

Appellant obtained new counsel following his trial. This attorney filed a motion for new trial asserting that appellant and the complainant had had a sexual relationship for several years, that appellant's trial counsel was aware of this relationship, and that counsel was ineffective because he did not present evidence of this relationship at the trial.

Appellant was the only witness to testify at the hearing on the motion for new trial. He said that he met the complainant in 1998 at the Walker home and soon began a sexual relationship with her. At that time, appellant was fifteen years old and living in Austin with his mother and siblings. Appellant said that his first sexual encounter with the complainant happened at a friend's house. He said that on that occasion the complainant "gave me oral sex." Appellant testified that this relationship continued until late 1999, when he moved from Austin to California to live with his father. He said that he and the complainant continued to meet whenever he visited Austin. He estimated that he and the complainant had engaged in sexual activity—primarily oral sex performed on him by the complainant—forty to fifty times.

Appellant testified that he last had sex with the complainant on the night of January 16, 2004, two days before the incident underlying this prosecution. That night, the complainant was sleeping in an upstairs bedroom. Appellant had been in the room earlier with the complainant,

watching television. He returned to the room and found the complainant sitting on the edge of the bed. Appellant testified, "I asked her about me and her having sex. She gave me the okay." Appellant said that the complainant then gave him oral sex.[1]

Appellant's description of his conduct on January 18 was basically consistent with his trial testimony. He said that he went to the family room where the complainant was sleeping and tapped her on the shoulder to wake her. "She yawned and stretched, I was right there in front of her. Stretching my belt for her and I caught myself, pulled back, my penis in her hand, and she just woke up." He added, "She had her hand wrapped around my penis and then she looked up, she saw I wasn't trying to do nothing so she let go and then she sat up." The complainant told appellant that she was angry, and he left the room. Appellant added that the complainant had told him previously that if he wanted to have sex when she was asleep "that it was all right, all I had to do is just go ahead and do whatever I was going to do."

Appellant testified that he told his trial counsel that he and the complainant had a prior sexual relationship. "I told him that I didn't remember all the details, but I told him that I do remember that me and this person when I was down here before and in between time had a sexual relationship." According to appellant, his attorney "just didn't believe it and didn't want to put it in front of the Court."

Appellant's trial counsel did not testify. The trial court overruled the motion for new trial at the conclusion of the hearing, and appellant perfected this appeal.

---

[1] The complainant also referred to this evening in her trial testimony. According to her, appellant entered the room while she was sleeping and began to watch television. She ordered him out of the room, closed the door behind him, and locked it.

### Discussion

After the appeal had been pending for eighteen months, the Court ordered the appointment of new counsel for appellant after his original appellate counsel, the attorney who filed the motion for new trial and represented him at the hearing, failed to file a brief or appear at a hearing to explain his failure to pursue the appeal.[2] The brief filed by appellant's current attorney raises a single point of error: appellant's second attorney rendered ineffective assistance at the new trial hearing because he did not call appellant's trial counsel to testify regarding that attorney's defensive strategy and his reasons for not adducing testimony regarding the alleged prior sexual relationship between appellant and the complainant. In other words, appellant contends that his second attorney was ineffective because he did not make a record adequate to support a claim on appeal that appellant's first attorney was ineffective. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005) ("We ordinarily need to hear from counsel whether there was a legitimate trial strategy for a certain act or omission."); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) ("When the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable."). Appellant does not ask the Court to reverse his conviction. Instead, he asks that the appeal be abated for a further hearing on the motion for new trial at which testimony from appellant's trial counsel can be received.

---

[2] Hereafter, we will refer to the attorney who represented appellant at trial as appellant's trial counsel or first attorney, the attorney who filed the motion for new trial and represented appellant at the hearing as appellant's second attorney, and the attorney who filed the brief on appeal as appellant's current attorney.

5

A criminal defendant is constitutionally entitled to the assistance of counsel at a hearing on a motion for new trial. *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978). The right to counsel means the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on his claim that his second attorney was ineffective at the new trial hearing, appellant must demonstrate that (1) the second attorney's performance at the hearing fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for this deficient performance, the result of the proceeding would have been different. *Id*. at 687-88; *Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005).

Just as there is no evidence in the record regarding the first attorney's strategy at trial, there no evidence in the record regarding the second attorney's strategy at the new trial hearing. Appellant argues that there can be no plausible strategic reason for his second attorney, having raised the issue of ineffective assistance of trial counsel in the motion for new trial, to have failed to call his first attorney to explain his conduct at trial. *See Andrews*, 159 S.W.3d at 103 (holding that trial counsel was ineffective, despite absence of testimony regarding strategy, where there could be no reasonable strategic justification for counsel's conduct). We can, however, conceive of a good reason for appellant's second attorney to have proceeded as he did: he knew that appellant's first attorney would testify that appellant never told him about the alleged sexual relationship with the complainant. We do not state this as a fact, but only to show that the second attorney may have had a sound, professional reason for failing to call trial counsel to testify at the new trial hearing. Under the circumstances, appellant has not overcome the presumption that his second attorney's conduct was reasonable.

Even if appellant's trial counsel had testified at the new trial hearing and acknowledged being told of appellant's claimed sexual relationship with the complainant, there is no reasonable probability that this would have had an effect on the outcome of either the new trial hearing or an appeal raising ineffectiveness of trial counsel. In a prosecution for sexual assault, evidence of the complainant's past sexual behavior is generally not admissible. Tex. R. Evid. 412(b). There is an exception to this rule where the complainant's past sexual behavior was with the accused and is offered by the accused on the issue of whether the complainant consented to the sexual behavior that is the basis of the charged offense. Tex. R. Evid. 412(b)(2)(B). But appellant testified at his trial that the alleged penetration of the complainant's mouth by his penis did not occur, and he did not testify to the contrary at the new trial hearing. In light of appellant's denial of the conduct alleged in the indictment, trial counsel could have reasonably concluded that consent was not an issue and there was no basis for the admission of evidence regarding the complainant's past sexual conduct. Further, it would have been reasonable for trial counsel to conclude that even if the court were to allow appellant to testify regarding his alleged sexual relationship with the complainant, it would not be a sound defensive strategy for appellant to first testify that the complainant was a liar and then to testify in the alternative that she was a person who willingly engaged in fellatio while asleep.

Appellant has not demonstrated that his second attorney's performance at the new trial hearing was deficient. There is no reason for the Court to abate the appeal for a further hearing on the motion for new trial. The point of error is overruled, and the judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   October 2, 2007

Do Not Publish